Elmer Gertz, Administrator of the Estate of Ceretta Gertz, Deceased, and Elmer Gertz, Plaintiffs-Appellants, v. Vella Bass, Milton Bass and Mike Bass, Individually and as Copartners, d/b/a C. F. Co., a Copartnership, Defendants-Appellees.

Gen. No. 49,621.

First District, First Division.

May 10, 1965.

Louis G. Davidson, of Chicago (Sidney Robin and Theodore G. Gertz, of counsel), for appellants.

Albert M. Howard, of Chicago (Charles D. Snewind and Robert A. Sprecher, of counsel), for appellees.

MR. PRESIDING JUSTICE BURMAN delivered the opinion of the court.

This suit was brought by Elmer Gertz, in his capacity as administrator of his deceased wife's estate and also in his own behalf, to recover damages in a survivorship action for the personal injuries suffered by the decedent and, alternatively, for her wrongful death. Gertz brings this appeal from a judgment entered on a verdict for the defendants.

Because of the manner in which we dispose of this case, it is only necessary to briefly summarize the evidence. On the morning of February 25, 1956, one of the defendants, Vella Bass, drove to the decedent's home which was located a few miles from where she lived. She picked up the decedent there in order to drive her to the Community Child Guidance Center at the DeHaven School in Evanston, Illinois, where the defendant and decedent were to participate in a session in child guidance work. The defendant, Vella Bass, customarily picked up the decedent each Saturday to take her to the school for this work. On the day in question, as the women were proceeding north on McCormick Boulevard, they passed under a viaduct located between Howard and Oakton Streets. The automobile went into a skid; the defendant lost control of the car and the automobile struck a railroad embankment. As a result of the accident, the decedent suffered severe and permanent injuries and on April 14, 1958, she died.

From the pleadings it appears that the plaintiffs' theory was that at the time of the occurrence the decedent was a passenger and not a guest in the automobile being driven by the defendant, Vella Bass; that Vella Bass was negligent in the operation of the

automobile; and that the decedent was in the exercise of ordinary care for her own safety.* It further appears that the defendants' theory was that the decedent was a guest and not a passenger in the automobile and hence that they can be liable only if the conduct of Vella Bass in driving the car was willful and wanton.

In answering the special interrogatories which were submitted to them, the jury found that the defendants' automobile was operated negligently immediately before and at the time of the occurrence; that the defendant, Vella Bass, was not operating the automobile in a willful and wanton manner at or before the time of the occurrence; and that the decedent was a guest and not a passenger in the automobile at the time of the occurrence. After the jury returned their sealed verdict for the defendant and after judgment was entered thereon, the trial court learned that, without his knowledge and without the knowledge of either counsel, the court's bailiff had complied with the jury's request during their deliberations and had given the jury a copy of the Webster's New Collegiate Dictionary, which was published by G. & C. Merriam Co., Springfield, Massachusetts, 1960 edition.

The plaintiffs appeal from the judgment and verdict on the following grounds: that the answers of the jury to the interrogatories were contrary to the manifest weight of the evidence and that it was prejudicial error to send a dictionary to the jury room at the request of the jury.

We have concluded that the trial court should have granted a new trial as requested in the plaintiffs'

* The defendants, Milton and Mike Bass, who were alleged to have been the owners of the automobile and who were alleged to have been negligent, by their agent and servant, Vella Bass, in the operation of the automobile, were dismissed out of the case by the court on the plaintiffs' request at trial.

post-trial motion. We believe that it was prejudicial error for an officer of the court to give to the jury a dictionary which was not admitted into evidence, because the dictionary contained definitions of terms which were essential to a decision in the case, and which were substantially different from the technical legal definitions of those terms which the jury was properly instructed to apply in arriving at their verdict.

██ It is well settled, and the defendants do not deny, that it is error to permit the jury to take with them into the jury room, during deliberations, matter which was not admitted into evidence. Crawford v. Brown, 321 Ill 305, 151 NE 911; Trohey v. Chicago City Railway Co., 168 Ill App 1. However, it is also clear that not all errors committed at trial constitute grounds for reversal. Only those errors which are prejudicial to the rights of the complaining party are reversible. People v. Storer, 329 Ill 536, 161 NE 76; Shafer v. Northside Inn, Inc., 44 Ill App2d 86, 194 NE2d 5.

Therefore, the question presented here is whether or not the error committed in sending the dictionary to the jury room was prejudicial to the plaintiffs so as to constitute grounds for reversing the verdict and judgment. We believe that it was. Under the pleadings, the following words were crucial to a decision in this case: "guest," "passenger," "willful," and "wanton." An examination of the definitions of these words which are contained in the dictionary, which was given to the jury, clearly shows that if such definitions were consulted by the jury they would confuse the jury and would be highly prejudicial to the plaintiffs.

The jury was properly instructed as to the meaning of "guest" in the following instruction:

183

> If you find . . . that Ceretta Gertz was riding
> . . . at the invitation of the defendant . . . only
> to confer some benefit incident to hospitality,
> companionship . . . and that the carriage did not
> tend to promote the mutual interests of both
> Ceretta Gertz and the defendant, and . . . was
> not primarily for the attainment of some objec-
> tive or purpose of the driver, then Ceretta Gertz
> was a guest. . . .

By contrast, the dictionary in question defines "guest" as a "visitor entertained without pay." If this part of the definition was accepted by the jury, then they would conclude that the decedent was a guest because the evidence is undisputed that the decedent did not pay the defendants for the ride. Another definition of "guest" in the same dictionary would confuse the jury because it defines the word as meaning one who lodges or boards in a hotel "for pay." Finally, both definitions are inconsistent with the instruction because nothing is mentioned in the instruction about payment.

The jury was also properly instructed as to the meaning of "passenger" in the following instruction:

> If you find . . . that . . . the carriage of Ceretta
> Gertz . . . tended to promote the mutual inter-
> ests of both Ceretta Gertz and the defendant, or
> . . . was primarily for the attainment of some
> objective or purpose of the defendant, then Ceret-
> ta Gertz was a passenger. . . .

The dictionary in question, however, defines "passenger" as "a traveller by some *public conveyance;* as a boat, train, etc." (Emphasis supplied). If the jury applied this definition, the decedent could not be considered a passenger because she was not travelling in a public conveyance when injured.

Finally the dictionary contains the following patently prejudicial definitions. It defined "wanton" as meaning "unchaste, lewd, . . . marked by arrogant recklessness of justice, of the feelings of others, or of the like; as, wanton cruelty; . . . willfully malicious." It defined "willful" as "self-determined; intentional; as willful murder."

██ From this consideration of the dictionary definitions of the crucial terms in this case, it is apparent that the danger of prejudice to the plaintiffs in this case is great. However, if should be noted that it is difficult to prove actual prejudice in a jury's deliberations, particularly since jurors' affidavits may not be heard to impeach the jury's verdict under Illinois law. Schiff v. Oak Park Cleaners & Dyers, Inc., 9 Ill App2d 1, 132 NE2d 416; Considine v. Hill, 22 Ill App2d 83, 159 NE2d 15.

██ In this case, we believe that the error is clear, that the danger of prejudice is great and that the proof of actual prejudice is difficult. Although we have no direct way of knowing from the record what actual use was made of the dictionary or what effect its use may have had, we cannot agree with the defendants that it is only pure speculation that the jury may have consulted the dictionary to obtain definitions of the crucial words in the case. It is reasonable to infer from the fact that the jury specifically requested the dictionary, that they made use of the volume in determining the meaning of the crucial terms and were influenced thereby to the prejudice of the plaintiffs.

██ As was said in a similar New Hampshire case, Daniels v. Barker, 89 NH 416, 200 A 410:

When incompetent evidence which may be prejudicial is received, the verdict is set aside, without proof that the jury gave it any weight in reach-

ing the verdict. To require the losing party to prove actual prejudice would place a difficult and unjust burden on him. Error having been committed, in any event it must be shown to be harmless. Here, no use of the dictionary could be proper, and harmless use is conjectural. (200 A at page 415)

Similar holdings have been made by the New Jersey courts. Palestroni v. Jacobs, 10 NJ Super 266, 77 A2d 183, was a suit brought in part to recover the balance due on a building contract. The jury consulted a dictionary given them by the judge to ascertain the definition of "wainscot," a word which was used in the specifications of the building contract, but which had no special legal definition and was not used in the instructions. The court reversed the verdict for the plaintiff on the grounds that the jury, in the process of considering the specifications, had consulted the dictionary to determine the meaning of the word in question. The court said that the dictionary definition was capable of influencing the jury in arriving at its verdict and that however small a part was played by the specifications in the entire verdict, the whole verdict was infected by the taint of illegal and extraneous evidence having the capacity to influence the jury's determination. In re Collins' Will, 18 NJ Misc 492, 15 A2d 98, was a will contest, one of the issues of which was whether the executor had used undue influence on the testatrix to execute the will. The jury consulted a dictionary, which was given to them by a constable without consulting the court, in order to ascertain the meaning of "unduly influence." The court held that the dictionary was incompetent evidence which, if offered, would have to be excluded from evidence at the trial. The court found that the dictionary definition of "undue" was too broad and that it was inappropriate to be applied to the evi-

dence in the case. In granting a new trial, the court observed that whether an inappropriate definition was productive of an idea, or a course of reasoning which materially contributed to the conclusion of the juror, is a problem that is too delicate to be safely made the basis of judicial inquiry.

The cases cited by the defendants are not determinative in the instant case. Pulkrabek v. Lampe, 179 Kan 204, 293 P2d 998, is unlike the present case because there the court found that the definition of "proximate," which the jury looked up in a dictionary, was not inconsistent with the concept of "proximate cause" as set forth in the instruction. Given this finding the court said that it would not be warranted in holding that the fact that the jury read the definition is sufficient to make it affirmatively appear that the substantial rights of the appellant were prejudiced. In Rocky Mountain Trucking Co. v. Taylor, 79 Wyo 461, 335 P2d 448, the jury was given a dictionary by a bailiff. Though the court said that the jury's use of the dictionary was "highly improper and is censured," it held that the verdict was amply supported by the evidence and that the jury's misconduct in asking for and receiving a dictionary, "while grave, was not prejudicial to the right of the appellants herein." We do not think that the same can be said in the instant case; we believe that the substantial rights of the plaintiffs here may have been seriously prejudiced.

The other cases relied on by the defendants are inapplicable here because they deal with the jury's use of matter other than a dictionary. Fedors v. O'Brien, 39 Ill App2d 407, 188 NE2d 739 (involving a blackboard on which a doctor had drawn a diagram to illustrate his testimony at the trial); Grand Lodge A. O. U. W. v. Young, 123 Ill App 628 (involving a magnifying glass); Gordon v. Farmer City Cheese Co.,

32 Ill App2d 85, 177 NE2d 18 (involving a book entitled *Handbook for Jurors in Illinois Civil Cases*).

Because we believe that under the circumstances in this case it was prejudicial error for the jury to obtain the dictionary, it is unnecessary to consider the other grounds on which reversal is sought. The judgment of the Circuit Court is reversed and remanded with directions to grant the motion for a new trial on all the issues.

Judgment reversed and cause remanded with directions.

MURPHY and KLUCZYNSKI, JJ., concur.