THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ROBERT L. SPICE, Defendant-Appellant.

Fourth District No. 14166

Opinion filed November 18, 1977.

Richard J. Wilson and Gregory Harris, both of State Appellate Defender's Office, of Springfield, for appellant.

C. Joseph Cavanagh, State's Attorney, of Springfield (Robert C. Perry and Jeffrey B. Levens, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. PRESIDING JUSTICE GREEN delivered the opinion of the court:

This case concerns the application of the long standing general rule, most recently stated by the supreme court in *People v. Nuccio* (1973), 54 Ill. 2d 39, 49, 294 N.E.2d 276, 281, "that jurors will not be permitted to impeach their verdict."

Defendant Robert L. Spice appeals his conviction of burglary and sentence to 5 to 15 years' imprisonment imposed by the Circuit Court of Sangamon County after a trial by jury. He contends that because one of the jurors, during trial but prior to deliberations, made an unauthorized visit to the scene of the crime and then reported his results to the other jurors during deliberations, he was deprived of his constitutional rights to a fair trial and to confront the witness against him. Most of the dispute concerns the propriety of the use of jurors' testimony to bring this information to the court's attention.

The evidence was undisputed that defendant was found by police officers inside a clothing store and that he had no authority to be there. At issue at trial was the question of whether at the time of his entry he had felonious or larcenous intent. Substantial circumstantial evidence indicated that he did and he offered no evidence in his defense. However, the defendant argued that his entering the store to get out of the rain and cold weather would be a reasonable inference for the jury to draw from the evidence and evidence was introduced that defendant gave this explanation to the police officers upon his apprehension. Since the jury took a period of 6 hours, minus time consumed eating the evening meal, to reach a verdict on a very simple presentation of facts, at least some of

them must have had difficulty in determining whether the circumstantial evidence was sufficient to prove defendant's intent.

After the jury had begun its deliberations, its forelady sent to the judge a note that stated:

"If a juror has visited the site of the alleged crime during the trial would that unfairly influence the judgment of the jury?"

The record does not show that the trial judge took any action with regard to the note. At the hearing on the post-trial motion, he stated that he interpreted the note as a request for the jury to view the scene during deliberations. The day after the trial, several of the jurors were brought into court and questioned about claims that during deliberations, they had improperly separated. During the questioning, a juror, Walter Solomon testified that during trial and prior to the jury's sequestration for deliberation, he had visited the scene of the occurrence and walked up the alley next to the clothing store.

At the hearing on the post-trial motion, the defendant called another of the jurors, Susan Snyder, to testify concerning defendant's allegation that matters not in evidence had been brought before the jury during deliberations. The State objected on the ground that her testimony would tend to impeach her verdict and would thus be inadmissible. The court overruled the objections and Miss Snyder testified that she had been voting for acquittal when Solomon told the jury of his visit to the premises. She stated that the note was sent to the judge at this time. She also stated that Solomon told the jury that the alley beside the store was a blind alley. This was apparently of some importance because if the alley was not a throughway, defendant would have been less likely to have been walking along it and, according to the statement he gave the police, found the side door to the store to be open and entered to find shelter. Miss Snyder admitted that she voted for a conviction after hearing Solomon's description of the alley and was influenced by this information. The trial judge denied the post-trial motion stating that he could not consider the juror's testimony because it impeached the verdict.

■■ In *Parker v. Gladden* (1966), 385 U.S. 363, 17 L. Ed. 2d 420, 87 S. Ct. 468, the court ruled that the constitutional rights to a fair trial and of confrontation had been violated in a State trial when a bailiff told a deliberating jury that the defendant was guilty and that if they made a mistake in finding the defendant guilty the Supreme Court would correct it. Since that decision, the application of the rule against impeachment of verdicts by jurors' testimony or affidavit has come under greater scrutiny. In *United States v. McMann* (2d Cir. 1967), 373 F. 2d 759, the court's opinion questioned whether a State rule against impeachment of verdicts was valid when the evidence sought concerned the constitutional right of

confrontation. In any event, we recognize that the precedent for us to follow is that of the supreme court of our State rather than that of a circuit court of appeals. *People v. Stansberry* (1971), 47 Ill. 2d 541, 268 N.E.2d 431, *cert. denied* (1971), 404 U.S. 873, 30 L. Ed. 2d 116, 92 S. Ct. 121.

We deem the appropriate precedent for us to follow to be *People v. Tobe* (1971), 49 Ill. 2d 538, 276 N.E.2d 294. There, the defendant contended that improper advice given to the jury by the bailiffs deprived him of a fair trial. He supported his post-trial motion with affidavits of seven jurors stating that the jury had several times asked a bailiff how long they were required to deliberate if they could not reach a verdict and that the bailiffs had responded that they must continue until they reached a verdict. One juror's affidavit stated that she voted for conviction against her judgment because of the bailiffs' statements and another juror's affidavit contained hearsay statements that other jurors had been similarly affected. The court record did not show that these inquiries had been brought to the judge's attention. Three bailiffs' affidavits confirmed that some but not all of the inquiries had been made and agreed with the jurors' affidavits as to the responses given. The trial court denied the motion.

The supreme court affirmed, ruling that the statements made by the bailiffs were not shown to be coercive or prejudicial. The court noted that under the rule that prohibits a juror from impeaching the verdict, the trial court "correctly refused to consider those portions of the two jurors' affidavits which were impeaching" (49 Ill. 2d 538, 543, 276 N.E.2d 294, 298). After that decision, the defendant obtained habeas corpus relief in the Federal district court which was affirmed on appeal in *United States ex rel. Tobe v. Bensinger* (7th Cir. 1974), 492 F.2d 232. That court ruled the bailiffs' responses to have been presumptively prejudicial, placing the burden on the State to prove otherwise and determined that the State had failed to do so.

Although disagreeing on the issue of prejudice to the defendant, the opinions of the two courts were consistent in the manner in which they defined the portions of the jurors' affidavits which were impeaching of the verdict. The supreme court spoke of portions of two affidavits as being impeaching. This obviously referred to the portions of the two affidavits that set forth that the bailiffs' responses had caused jurors to change their vote. The opinion clearly applied that the balance of those two affidavits and the other affidavits of the jurors which merely set forth the conversations that took place were not impeaching. The circuit court of appeals took the position that the rule in Illinois was that statements showing the influence exerted on jurors were not impeaching but that

statements as to the effect that the influence had were impeaching. That court followed that rule in reaching its decision.

A very similar interpretation of the rule on impeachment of verdicts is contained in A.B.A. Standards for the Administration of Criminal Justice, Standards Relating to Trial by Jury, section 5.7, which states in part:

"(a) Upon an inquiry into the validity of a verdict, no evidence shall be received to show the effect of any statement, conduct, event or condition upon the mind of a juror or concerning the mental processes by which the verdict was determined.

* * *

"(c) Subject to the limitations in subsection (a), a juror's testimony or affidavit shall be received when it concerns:

(i) Whether matters not in evidence came to the attention of one or more jurors, under circumstances which would violate the defendant's constitutional right to be confronted with the witnesses against him; or

(ii) Any other misconduct for which the jurisdiction permits jurors to impeach their verdict." ABA Standards, Trial by Jury §5.7 (1974).

■■ Applying the foregoing rule to the instant case, we determine that juror Snyder's testimony that juror Solomon's statements about the alley influenced her verdict were inadmissible at the hearing on the post-trial motion, but her testimony that Solomon had described to the jury his visit to the scene and his investigation concerning the alley was properly before the court. The record of the note having been sent to the jury negates the likelihood that Miss Snyder's testimony was fabricated after the verdict had been rendered and her testimony was not countered in any way.

■■ In *Tobe* the supreme court noted the difference between the misconduct involved there and in *Parker v. Gladden* where the bailiff told the jury that the defendant was a bad man and that a higher court would correct any mistake if they convicted the defendant. Here, both by the juror's unauthorized visit to the scene and his description of the alley given to the jury during deliberation, the defendant's right to confront adverse witnesses was violated just as in *Gladden* when the bailiff told the jury about the defendant's characteristics. As in *Gladden,* the jury was unable to agree for a period of time that was substantial considering the simplicity of the evidence.

Because the defendant is precluded from showing by the direct testimony of or affidavit of a juror whether the improprieties influenced the verdict and thus prejudiced him, we can only decide that issue from circumstantial evidence. We determine, however, that the only

conclusion that can be reached from the undisputed circumstantial evidence presented is that the defendant was substantially prejudiced. For that reason, we reverse the conviction and remand to the trial court for a new trial.

Reversed and remanded.

MILLS and WEBBER, JJ., concur.