RHONDA DANHOF, Plaintiff-Appellant and Cross-Appellee, v. RICHLAND TOWNSHIP, Defendant-Appellee and Cross-Appellant.

Third District   No. 3—89—0589

Opinion filed August 30, 1990.—Rehearing denied October 2, 1990.

Jerelyn D. Maher, of Janssen, Maher, Wertz & Miller, of Peoria (Jay H. Janssen, of counsel), for appellant.

Sarah Hansen Sotos and Jenna Lynn Schoeneman, both of Judge & Knight, Ltd., of Park Ridge (Elizabeth Brown Knight, of counsel), for appellee.

PRESIDING JUSTICE HEIPLE delivered the opinion of the court:

The plaintiff, Rhonda Danhof, was a passenger in a truck which lost control on a gravel roadway in Marshall County, Illinois, which resulted in Rhonda becoming a quadraplegic. The truck was owned by Rhonda's fiance, Ted Vickers. At the time of the accident, Ted, who was also a passenger in the truck, was allowing his 13-year-old sister, Rebecca Vickers, to drive the truck. On May 20, 1985, the plaintiff filed a negligence action against Rebecca Vickers and Ted Vickers, the County of Marshall, and Richland Township. The County of Marshall was dismissed from the lawsuit on the basis that the roadway was under the jurisdiction of defendant Richland Township. The suit against Rebecca Vickers and Ted Vickers was dismissed after a good-faith settlement was reached wherein the driver's insurance carrier, Country Companies, paid the policy limits applicable to the risk. The negligence claim against Richland Township, which alleged that the condition of the gravel roadway was a proximate cause of the accident, went to jury trial and the jury found for defendant Richland Township. The plaintiff filed a post-trial motion alleging that reversible error occurred in three instances: the jury's misconduct during deliberations where the jury in order to define "proximate" consulted a dictionary which was not admitted into evidence; the jury was improperly instructed as to the duty of the driver of the vehicle, in which the plaintiff was a passenger, when the driver was no longer a party to the action; and that the trial court improperly excluded the rebuttal testimony of Bobette Connett. We find that no reversible error occurred and affirm the decision below.

The accident in question happened on August 28, 1984, when Rebecca Vickers turned the truck she was driving onto Richland Township Roadway 425 North (Roadway 425N) in rural Lacon, Illinois. As Rebecca turned onto the gravel roadway, she lost control of the truck and the truck rolled over. The plaintiff's theory of the case is that the condition of Roadway 425N was a proximate cause of the accident since Richland Township had allegedly dumped 56 tons of gravel onto the roadway without grading the roadway. The plaintiff presented five witnesses who testified as to the condition of the gravel upon Roadway 425N. Rebecca Vickers testified that as she turned the corner onto Roadway 425N she could not steer the truck because the gravel was pulling her. Ted Vickers testified that the gravel was fluffy, heavy, uneven and thick. Ronald Danhof, the plaintiff's father, went to the accident scene in the early morning hours on August 29, 1984, and observed freshly graded ditches as well as new, thick, wavy gravel. Carol Vickers, Ted's mother, testified that she drove on Roadway 425N on the day of the accident and that the gravel was heavy, thick, and rutted. James Vickers, Ted's father, also traveled on Roadway 425N prior to the accident and described the roadway as being great amounts of gravel just dumped in piles with ruts. James Vickers further testified that the roadway had been graded two or three days before the accident.

The defendant presented three witnesses who testified regarding the condition of Roadway 425N on August 28, 1984. James Wiegand, the Marshall County deputy who responded to the accident, considered the roadway to be in good condition and stated the roadway appeared to have fresh gravel on it and to have been recently graded. Amos Tomason, a nearby resident who heard the noise of the accident and went to the scene, testified that the roadway was "fairly even, same as always" and that he observed no significant humps or lumps of gravel. Charles Dalrymple, an emergency medical technician with the ambulance that responded to the scene, testified that he did not experience any difficulty with the ambulance on the gravel road and that the road appeared fairly even with no big piles, humps or waves of gravel.

Richland Township road commissioner Paul Fitschen testified that two township trucks had hauled 56 tons of gravel on August 28, 1984, but did not state where the gravel was dumped. Fitschen further stated that the township's sole road grader was not operated on August 28, 1984. Robert Lippman, a civil engineer who testified as the plaintiff's expert witness, testified that if the township piled up wavy gravel and left it overnight, a "loose gravel" sign should have

been posted to warn motorists. Lippman further admitted, however, that his opinion was made without the benefit of observations made by the investigating police officer, the neighbors, or ambulance personnel which Lippman had requested from plaintiff's attorney, Jay Janssen. Lippman stated that if the investigating police officer, the neighbors, and ambulance personnel indicated that they had driven on the roadway without running into any problems and the roadway contained no waves, bumps, or humps of gravel, then it would be his opinion that no advance warning sign was necessary.

On the last day of trial, after both parties had rested their case, the plaintiff attempted to call Bobette Connett as a rebuttal witness, claiming that she was a disinterested person who could not be found during the plaintiff's case in chief and that she could testify that the gravel road was a "mess," with gravel 10 inches deep. The defendant objected on the grounds that there was not sufficient disclosure of the witness' location in the plaintiff's answers to interrogatories and that the testimony did not constitute rebuttal testimony. The trial court subsequently excluded Bobette Connett as a rebuttal witness. Thereafter, the plaintiff elicited testimony from Bobette Connett in the form of an offer of proof in order to attempt to change the trial court's previous ruling. Following Connett's testimony, the trial court rejected the plaintiff's offer of proof, and the evidence was closed.

After closing arguments, the jury was given its instructions and began its deliberations. During deliberations, it was discovered that the jury utilized a two-volume Webster dictionary which was not admitted into evidence. The trial court subsequently held an evidentiary hearing to inquire into the presence and use of materials taken into the jury room during deliberations. The jury foreman, Donald Stedman, testified that he looked up the word "proximate" in the dictionary and read it to the jury. The remaining jury members testified that they recalled a dictionary being present but their memories varied as to what words were looked up. The jurors stated that they followed the trial court's jury instructions and that the dictionary definition of "proximate" did not affect the verdict. Following the evidentiary hearing, the trial court found that the jury's verdict was amply supported by the evidence and that the jury verdict was not tainted by the use of the dictionary.

■■ On appeal, the plaintiff first argues that the trial court committed reversible error in finding that it was harmless error for the jury to consult a dictionary which was not admitted into evidence to define proximate cause. We agree with the trial court that the plain-

tiff here was not so substantially prejudiced by the presence of the dictionary as to require a reversal. First, it is important to point out that the trial court conducted a full evidentiary hearing following the trial to determine what effect, if any, the dictionary had upon the jury's verdict. This evidentiary hearing was in accordance with *Loucks v. Pierce* (1950), 341 Ill. App. 253, wherein a dictionary definition not admitted into evidence was present in the jury room. The trial court in *Loucks*, without conducting an evidentiary hearing, found that the presence of the dictionary definition, among other irregularities, necessitated granting a motion for a new trial. The appellate court in *Loucks* reversed and remanded the case for an evidentiary hearing to determine if the presence of the dictionary, among other irregularities in the jury's deliberations, warranted a new trial. Thus, in the present action, the trial court followed the proper procedure in first conducting an evidentiary hearing before granting a new trial.

■■ Additionally, it is well settled that not every instance in which extraneous or unauthorized information reaches the jury results in error so prejudicial to require reversal. (*People v. Holmes* (1978), 69 Ill. 2d 507.) Here, the definition of "proximate" in the dictionary did not contradict, nullify, or negate the trial court's jury instruction on proximate cause. (See *Gertz v. Bass* (1965), 59 Ill. App. 2d 180.) The Webster dictionary defined proximate as "next," while the jury instruction on proximate cause provided as follows:

> "When I use the expression 'proximate cause,' I mean a cause which, in natural or probable sequence, produced the injury complained of. It need not be the only cause, nor the last or nearest cause. It is sufficient if it concurs with some other cause acting at the same time, which in combination with it, causes the injury."

At the evidentiary hearing, the jurors stated they followed the trial court's jury instructions and that the dictionary definition of "proximate" did not affect their verdict. Under these circumstances, we agree with the trial court that the use of the dictionary by the jury was, at most, harmless, nonprejudicial error.

■■ ■ The plaintiff next argues that it was reversible error for the trial court to give jury instruction number 26, which provided as follows:

> "It is the duty of every driver of a vehicle using a public highway to exercise ordinary care at all times to avoid placing himself or others in danger and to exercise ordinary care at all times to avoid a collision."

The plaintiff claims that this instruction was erroneous since the

defendant driver had previously entered into a good-faith settlement and was no longer a party to this cause of action. We find no merit to the plaintiff's contention. It is well established that a particular jury instruction given by the trial court is justified if it is supported by some evidence in the record. (*Ralston v. Plogger* (1985), 132 Ill. App. 3d 90.) The central issue in this dispute is whether the conduct of the 13-year-old driver was the sole proximate cause of this accident or whether other proximate causes produced the plaintiff's injuries. Jury instruction number 26 is an accurate statement of the law and deals directly with the crux of this controversy. Consequently, the trial court did not err in submitting instruction number 26 to the jury.

■■ ■ Finally, the plaintiff maintains that the trial court committed reversible error in excluding the rebuttal testimony of Bobette Connett. The applicable rule is that the allowance of rebuttal evidence lies within the discretion of the trial court, and the trial court's ruling will not be set aside absent an abuse of discretion. (*Henderson v. Hudson* (1984), 121 Ill. App. 3d 780.) In the instant case, the trial judge heard Mrs. Connett's testimony through an offer of proof and then determined to exclude her testimony. We cannot find that the trial court abused its discretion since Mrs. Connett's testimony regarding the condition of the gravel roadway was merely cumulative of the testimony presented by the plaintiff's witnesses and would not be reasonably expected to change the jury verdict.

For all the foregoing reasons, we affirm the decision of the trial court.

Affirmed.

BARRY and SCOTT, JJ., concur.