THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
BRIAN SZYMANSKI, Defendant-Appellant.

Second District   No. 2—90—0054

Opinion filed March 10, 1992.

GEIGER, J., dissenting.

G. Joseph Weller, of State Appellate Defender's Office, of Elgin, and Joshua Sachs, of Chicago, for appellant.

James E. Ryan, State's Attorney, of Wheaton (William L. Browers, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE DUNN delivered the opinion of the court:

Following a jury trial, the defendant, Brian Szymanski, was convicted of the offense of forgery (Ill. Rev. Stat. 1989, ch. 38, par. 17—3(a)(1)). He was sentenced to probation for a term of two years and was ordered to pay restitution in the amount of $500. The defendant raises two issues on appeal: (1) whether he is entitled to a new trial or, in the alternative, an evidentiary hearing, because of evidence of jury misconduct; and (2) whether improper argument by the prosecutor deprived him of a fair trial. We affirm.

The defendant was charged by indictment with the offenses of forgery (Ill. Rev. Stat. 1989, ch. 38, par. 17—3(a)(1)) and theft of property in excess of $300 (Ill. Rev. Stat. 1989, ch. 38, pars. 16—1(a)(1)(A), (b)(4)). At trial, the State presented evidence that Joyce Lenart operates a business known as Trend Design Associates, Inc. The business is located at 200 North Washington Street in Naperville. On January 11, 1989, Lenart gave a signed, blank check to one of her employees, Julie Olson, so that Olson could pay to ship some packages. Olson put the check in her pocket and left the office shortly before noon. She got into her car, which was parked on the street, and went home for lunch. Approximately 45 minutes later, Olson was getting ready to do her errands and realized that the check was gone. She called the Trend Design office to have the office cancel the check.

Dorothy Strutz was employed by the Harris Bank, which she testified is located at "Washington Street, 503" in downtown Naperville. She remembered that at 12:24 p.m. on January 11, 1989, she cashed a check signed by Joyce Lenart, the wife of bank vice-president Ray Lenart. She was uneasy about the check because it was signed by Lenart but made out by someone else. She looked for Ray Lenart, but he was not in his office. She then double-checked the account for funds and double-checked the signature to make sure that it was Joyce's signature. Strutz testified that the person presenting the check was about 6 feet tall and had light brown hair. She asked him for identification. He produced a driver's license, or what looked like one, and Strutz compared the picture

on the license to the person presenting the check and also wrote the driver's license number on the back of the check. She stated that the identification document she examined was not a copy of a traffic ticket. Strutz could not identify the defendant as the person who cashed the check on January 11, 1989.

The check to which Strutz referred was admitted into evidence. On the front, it was dated January 11, 1989, drawn on the Harris Bank, and payable to "Brain [sic] Szymanski" in the amount of $500. This writing on the front was in black ink. The signature line showed "Joyce Lenart" written in blue ink. The back of the check was endorsed, in black ink, "Brian Szymanski." A driver's license number was written under the endorsement signature.

Both Lenart and Olson testified that they did not know Brian Szymanski. Lenart also testified that she had not given Szymanski permission to possess the check or any money from her account. Documents were admitted into evidence to show that the driver's license number written on the back of the check was the defendant's driver's license number.

Police detective Michael Cross testified that he and Detective James Griffith interviewed the defendant on January 25, 1989. The defendant told the officers that on January 11 he was at the Naperville Recycling Center from 8 a.m. to 9 a.m. After he left the center, the defendant said, he went to the library and was there most of the day. According to Officer Griffith, the recycling center is located in the area of Fisk Street and Ogden Avenue, and the library is located seven or eight blocks south of the Harris Bank.

When the defendant allowed the officers to search his wallet, it contained no driver's license, but a traffic ticket issued November 11, 1988. The defendant stated that he had posted his license for bond on that date. He also gave the police 14 pages of handwriting samples.

John Gorajczyk, the sergeant in charge of the identification section of the Du Page County crime laboratory, was qualified as an expert in the field of handwriting analysis. He testified that he compared the handwriting samples given by the defendant to the handwriting on the check. He stated that he could not be positive that the date, "Brain [sic] Szymanski," and $500 notations on the front of the check were written by the defendant. He also stated that the signature on the front of the check appeared to have been written by "a different writer." He testified that the endorsement on the back of the check was written by the defendant.

Joel Kagann, chief deputy circuit court clerk of Du Page County, testified on behalf of the defendant. He stated that pursuant to a traffic citation the defendant's driver's license was posted as bond on November 11, 1988. The license remained with the file in the circuit clerk's office until it was sent to the Secretary of State on March 22, 1989.

The defendant testified that he was not in the Harris Bank on January 11, 1989. He also testified that he did not write out the check or endorse it. He stated that he was at the library on January 11, 1989, from 10:30 a.m. until 3 p.m.

During closing arguments, the prosecutor argued that Dorothy Strutz may have been mistaken when she testified that she was shown a driver's license for identification. The prosecutor argued that Strutz might, instead, have been given a traffic ticket for identification or that the defendant might have had more than one driver's license. During his rebuttal argument, the prosecutor argued that prosecutors were not going to make up a case against the defendant and stated, "[n]obody is going to put their law license on the line over Brian Szymanski to try and make up a case against him."

The jury returned verdicts of guilty on the forgery charge and not guilty on the theft charge, and it was discharged. The verdicts were not read until the next day since the defendant and the State had stipulated to waive polling of the jury. When the verdicts were read, the court denied the defendant's oral motion to question two jury members who were present outside the courtroom. Those two jurors had expressed dissatisfaction with the verdicts, and one had tried to communicate with the court. The court read the verdicts into the record and entered judgment on them.

Prior to sentencing, the defendant filed a motion for a new trial. Handwritten statements of four jurors were attached to the motion. All four statements were signed, and one of the statements was signed and notarized. The statements essentially stated that one of the women on the jury had appointed herself foreperson. They also stated that at one point during the deliberations six of the jurors believed that the defendant was guilty and six believed that the defendant was not guilty. At that point, the jurors sent a note to the judge, stating that they could not reach a unanimous decision. The judge responded: "Please continue with your deliberation." The jury eventually reached a compromise verdict, finding the defendant not guilty of theft but guilty of forgery.

The statements also stated that after the jurors received the note from the judge, the "self-appointed" foreperson drew a map of part of Naperville. One of the juror's statements said that the map showed the location of the Trend Design office, the recycling center, the Harris Bank and the library. Another statement said that the foreperson told them that she lived in Naperville and that she used the map to demonstrate the route the defendant took from the recycling center to the bank to the library. Another juror's statement said that the map was used to show that the buildings in question were located in a small area. All of the statements stated that the map was inaccurate.

On November 9, 1989, the court heard the defendant's argument that, based on the statements of the jurors, an evidentiary hearing should be held to determine whether the verdict should be vacated. The trial court denied the defendant's request for a hearing. The court found that the map referred to in the statements was merely an extension of the jury foreperson's mental processes and was not "extraneous" to the actual deliberations.

The defendant later filed an amended post-trial motion based on allegations that the State engaged in improper closing argument and on the jurors' statements. The defendant attached to the motion the signed, notarized statement of a fifth juror who referred to the foreperson's map and stated that it was inaccurate. The court heard the post-trial motion on January 11, 1990. It denied the motion and sentenced the defendant to two years' probation and $500 in restitution.

On appeal, the defendant argues that based on the supreme court's decision in *People v. Holmes* (1978), 69 Ill. 2d 507, those portions of the jurors' statements which referred to the map drawn by the foreperson were admissible to show that the jury improperly considered an informal "exhibit" which he had no opportunity to confront or refute. The defendant contends that the purpose of the map was to demonstrate that he had the opportunity to commit the crime. He argues that the trial court should have reversed his conviction on this basis or, in the alternative, should have ordered an evidentiary hearing to determine the full extent of the facts.

The *Holmes* court distinguished two broad categories of juror affidavits or juror testimony offered to impeach a verdict. The first category covers offers to prove the motive, method or process by which the jury reached its verdict. This type of evidence is inadmissible. (*Holmes*, 69 Ill. 2d at 511; *People v. Boclair* (1989), 129 Ill. 2d 458, 485-86; see also *Tanner v. United States* (1987), 483 U.S. 107,

116-27, 97 L. Ed. 2d 90, 103-11, 107 S. Ct. 2739, 2745-51.) The second category covers offers of proof of extraneous information brought to the jury's attention or improper influence brought to bear on the jury, when that proof is not offered also to show the information's or influence's effect on the juror's deliberations or mental processes. (*Holmes*, 69 Ill. 2d at 512, 516.) This type of evidence may be admissible. *Holmes*, 69 Ill. 2d at 512, 516.

The court in *Holmes* referred favorably to Rule 606(b) of the Federal Rules of Evidence. That rule provides, in relevant part:

"Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror." 28 U.S.C.A. Fed. R. Evid. 606(b) (West Supp. 1991).

The defendant correctly concedes that everything in the jurors' statements which refers to their mental processes during deliberations and their compromise verdict could not properly be considered by the trial court. However, he argues that the jurors' statements regarding the foreperson's map were admissible to impeach the verdict and should have been considered by the trial court. We disagree.

■■ Generally, affidavits and testimony of jurors have been found admissible to impeach a verdict when they relate to evidence not admitted at trial, but obtained outside the courtroom as a result of an independent investigation on the part of a juror or jurors. See *Holmes*, 69 Ill. 2d at 510, 516 (evidence that several jurors visited a shoe store to look at shoe soles and reported back to the other jurors was admissible); *Haight v. Aldridge Electric Co.* (1991), 215 Ill. App. 3d 353, 368-69 (evidence that a juror looked at an almanac to determine the time of sunset on the date of the accident in question was admissible); *Danhof v. Richland Township* (1990), 202 Ill. App. 3d 27, 30 (evidence that a dictionary not admitted into evidence was present in the jury room and was consulted by a juror regarding the definition of "proximate" was admissible); *Heaver v. Ward* (1979), 68 Ill. App. 3d 236, 239 (evidence that the jury foreman

made an independent visit to the intersection at issue and brought a diagram of the intersection and a copy of the publication "Rules of the Road" to the jury room was admissible); *People v. Spice* (1977), 54 Ill. App. 3d 539, 543 (evidence that a juror visited the scene of the occurrence and described his visit to the jury was admissible).

In rendering a verdict, a jury should consider only those facts introduced into evidence. (*Johnson v. Danville Cash & Carry Lumber Co.* (1990), 200 Ill. App. 3d 196, 199; *Heaver v. Ward* (1979), 68 Ill. App. 3d 236, 239.) However, the law is well established that the jury has a right to consider the evidence in light of its own knowledge and observations in the affairs of life. (*People v. Rogers* (1959), 16 Ill. 2d 175, 182; *People v. Dixon* (1985), 133 Ill. App. 3d 1073, 1087.) The conduct at issue in this case, namely, the drawing of the map, did not involve a juror's independent investigation or the presentation of an information source not in evidence. Rather, the conduct involved a juror's own knowledge and observation in the affairs of life.

The facts of this case differ from the facts in cases where statements of jurors were found to be admissible to impeach the verdict in that this juror did not conduct an independent investigation into the matter. She did not visit the locations in question and then draw the map to describe what she had seen to the other jurors. Rather, the juror lived in the area and was drawing on her own familiarity with and knowledge of that area to examine the evidence before the jury. Her actions did not have the effect of producing extraneous evidence.

The trial court was correct in concluding that the jurors' statements were inadmissible to impeach the verdict because the map was merely an extension of the foreperson's "mental processes" and not extraneous. To hold otherwise would have the effect of requiring jurors to leave their common sense at the door before entering the jury room. Accordingly, the statements regarding the use of the map are properly classified as inadmissible statements concerning the mental processes by which the jury reached its verdict.

The defendant also contends he was deprived of a fair trial because the State engaged in improper argument. The defendant first contends the prosecutor argued facts not supported by the evidence.

The defendant specifically refers to the State's argument that Dorothy Strutz might have taken a traffic ticket as identification to cash the check or that the defendant might have had more than one

driver's license. We agree with the State that those portions of the prosecutor's argument either were based on the evidence at trial and reasonable inferences therefrom, or were invited by the defendant. A prosecutor's statement based on legitimate inferences from the proof does not constitute improper argument. (*People v. Albanese* (1984), 104 Ill. 2d 504, 520.) Also, remarks are not improper when they are an invited response to the argument of defense counsel. *People v. Nitz* (1991), 143 Ill. 2d 82, 118-19.

■ The defendant also argues that the prosecution improperly argued its own credibility. Specifically, the defendant refers to the prosecutor's statements regarding the so-called "conspiracy" against Brian Szymanski. The prosecutor stated the following:

"The defense in this case is to put the police on trial, put the victims on trial, put the prosecutors on trial. And that's the easiest thing to do when you have evidence that can't be explained away, because that license number can't be explained away, the signature can't be explained away.

Do you really think that we as prosecutors have nothing better to do that we have to go around making up a case against Brian Szymanski? *** Brian Szymanski isn't somebody that some prosecutor's career is going to be made out of. Nobody is going to be on the evening news about this case. He is not Jim Baker, he is not Zsa Zsa Gabor, nobody is going to become a celebrity. Nobody is going to put their law license on the line over Brian Szymanski to try and make up a case on him.

The only reason he is here today, the only reason, is because his signature on those exemplars matches the signature on the back of the check."

The defense argued that the police and the prosecutors wanted to make a case against Brian Szymanski even though they had no evidence. During trial, defense counsel stated:

"And the evidence, I submit to you in this case, will show you that the State and the police have brought this here with not any evidence whatsoever to convict this individual because that's what they want to do."

The defense asserted that because the defendant's name was "Brian Szymanski" he was brought to court and charged with the offense. In addition, the defense argued that the police and the prosecutors had engaged in "sloppy police work" and "sloppy work from the State," asserting that they should have been investigating Julie Olson rather than the defendant.

Although the State should avoid argument which can be construed as injecting the integrity or authority of the State's Attorney's office into the dispute (*People v. Roach* (1991), 213 Ill. App. 3d 119, 124), in a situation such as this, where the prosecutor's integrity has been challenged by the defendant, this type of argument is permissible. (*People v. Collins* (1985), 106 Ill. 2d 237, 277.) The response by the prosecutor was invited and cannot be relied on as error. *Collins*, 106 Ill. 2d at 277.

Accordingly, we affirm the decision of the circuit court of Du Page County.

Affirmed.

NICKELS, J., concurs.

JUSTICE GEIGER, dissenting:

I respectfully disagree with the majority's determination of the nature of the extraneous information used by the jury in this case. As the supreme court enunciated in *People v. Holmes* (1978), 69 Ill. 2d 507, and as the majority has recited, there are two general types of juror testimony or affidavits offered to impeach a verdict. In this case we consider a map drawn by one juror and presented to the other jurors as an accurate factual representation. I would find that that map is not a reflection of the thought process of the jury but, rather, the same as evidence presented to prove a disputed fact. Juror statements relating that the map was used by the jury, therefore, fall squarely into the *Holmes* category of evidence that may be used to impeach a verdict.

Here, the defendant sought to impeach the verdict with evidence that from independent exploration one juror determined the geographical layout of an area critical to the charged offense. According to the defendant's evidence, that juror brought the results of her determination to the jury room and drew a map for the other jurors to consider. I see no difference between that basis for impeachment and the evidence that was found to impeach the verdict in other cases. *Holmes*, 69 Ill. 2d at 510, 516 (evidence that several jurors visited a shoe store to look at shoe soles and reported back to the other jurors); *Haight v. Aldridge Electric Co.* (1991), 215 Ill. App. 3d 353, 368-69 (evidence that a juror looked at an almanac to determine the time of sunset on the date of the accident in question); *Heaver v. Ward* (1979), 68 Ill. App. 3d 236, 239 (evidence that the jury foreman made an independent visit to the

intersection at issue and brought a diagram of the intersection and a copy of the publication "Rules of the Road" to the jury room); *People v. Spice* (1977), 54 Ill. App. 3d 539, 543 (evidence that a juror visited the scene of the occurrence and described his visit to the jury).

Although the map-drawing juror's independent investigation in this case took place at some earlier time, there can be no doubt that the result of that investigation directly related to a critical issue in the case—the defendant's physical ability to commit the offense. There also can be no doubt that the juror's map was presented to the jury without the benefit of cross-examination or review by counsel. If we allow this type of factual matter to be presented to the jury in the jury room and not in the courtroom, we are depriving the parties to the litigation of their right of confrontation.

It is clear that the extraneous information presented as facts in the jury room was not on matters of knowledge common to all of the jurors. The rule should be, and in my opinion is, that the place for the presentation of factual matters is the courtroom and not the jury room. I would find that the juror statements here, like the evidence in *Holmes, Haight, Heaver*, and *Spice*, should have been considered in impeachment of the verdict.