MARILYN MAIN, Plaintiff-Appellant, *v.* BALLYMORE COMPANY, Defendant-Appellee.

Third District   No. 82—453

Opinion filed April 29, 1983.—Rehearing denied June 14, 1983.

S. David Simpson, of McLaughlin, Hattery, Simpson & Sullivan, of Galesburg, for appellant.

Rex K. Linder and John Lesaganich, both of Heyl, Royster, Voelker & Allen, of Peoria, for appellee.

PRESIDING JUSTICE STOUDER delivered the opinion of the court:

Plaintiff Marilyn Main filed a complaint for damages stemming from personal injuries allegedly occasioned by the strict liability in tort of defendant Ballymore Company. After a jury trial, the circuit court of Knox County entered judgment in defendant's favor.

Plaintiff received her injuries on March 9, 1977, when she fell from a ladder at her place of employment. The ladder was manufactured by defendant and was termed a "multiple ladder stand." It is constructed of tubular metal and has four nearly vertical legs with rubber tips on the bottom. Four wheels with spring mechanisms allow the ladder to roll when there is little or no weight on it.

Plaintiff's expert, Dr. Harold Weinstock, testified that he tested the ladder at the scene of the fall. Using barbell-type weights, he found that when 116.2 pounds was placed on the middle of the top step, on which plaintiff had been standing when the ladder moved, one leg made no contact with the floor and another made "just bare contact." When the weight was moved left of center, neither of the right legs made contact with the floor and another leg made "point like contact." When 120 pounds was placed on the top step, the various legs were supporting 86.5, 18.5, 12.4 and 2.6 pounds. Weinstock testified that a user of the ladder who moves exerts a horizontal force which is resisted by the frictional force between the ladder and the floor, and when the horizontal force exceeds the frictional force, the ladder will move or slide. Based on the foregoing, he concluded the ladder was unstable, the instability was the result of using springs which were "too stiff," and the ladder was unreasonably dangerous for a person under 200 pounds.

Defendant's expert, Professor Thomas Dolan, testified that he also tested the ladder at the scene of the fall. He found the floor had a very low coefficient of friction, .22 or about three times less than a concrete pavement, and that the surface under the ladder would affect the ability of the rubber-tipped legs to grip. In response to a hypothetical question, Dolan testified that the ladder would not move, that it would be physically impossible for it to roll or slide when the user is standing at the center of the top step and not moving, that the ladder had a great deal of stability, and that one could rock it considerable distances without it toppling over.

After listening to the experts and other testimony, the jury retired at 11:52 a.m. of the fourth day of trial. At 12:05 p.m., it requested the ladder. Over various objections by both parties, the court allowed the ladder in the jury room. At 1:50 p.m., the jury requested

a pad with a surface similar to the floor at the scene of the fall and an object or objects weighing approximately 120 pounds. This request was denied.

The sole issue presented for our review is whether the trial court abused its discretion in allowing the ladder to be taken to the jury room. It is well established that the court has considerable discretion as to the exhibits which may be there taken. *Lamphere v. Old Second National Bank* (1976), 39 Ill. App. 3d 610, 350 N.E.2d 272, *appeal denied* (1976), 63 Ill. 2d 557; *Nowakowski v. Hoppe Tire Co.* (1976), 39 Ill. App. 3d 155, 349 N.E.2d 578; *Kaspar v. Clinton-Jackson Corp.* (1969), 118 Ill. App. 2d 364, 254 N.E.2d 826, *appeal denied* (1970), 43 Ill. 2d 397.

There is little question as to the reason the jury requested the ladder. As noted by the trial court:

"This ladder had been drug [*sic*] through this courthouse for four days and it is apparent to me that the jury wants this ladder to walk on it. They want to use it. \*\*\*

\*\*\* This is what they want it for. *They want to test the ladder.*" (Emphasis added.)

The difficulty with this situation has been addressed:

"The major problem stemming from relatively free jury access to tangible exhibits other than writings is that of controlling jury use of them for purposes of experimentation. The general limitations upon the introduction of evidence of experiments obviously become largely meaningless if the jury is allowed to conduct experiments of its own devising in the jury room." (McCormick, Evidence sec. 217, at 541 (2d ed. 1972).)

Because of the fundamental rule that the jury may not receive evidence out of court, it has been held that insofar as tests or experiments carried out by the jury during deliberations have the effect of introducing new evidence out of the presence of the court and parties, such are improper; and, if the new evidence in question has a substantial effect on the verdict, prejudicial. (See Annot., 95 A.L.R.2d 351 (1964).) This is reflected in the Illinois rule, in criminal causes, that it is improper to conduct experiments or private investigations which have the effect of producing evidence which was not introduced at trial. *People v. Gilbert* (1977), 68 Ill. 2d 252, 369 N.E.2d 849.

In the cause at bar, the jury had the benefit of the testimony of, *inter alios*, expert witnesses who had conducted tests at the scene of plaintiff's fall. When the jury requested the ladder, it was apparent to all an independent investigation of its properties was contemplated, and this was confirmed by the later request for the pad and weights.

The jury's testing did not take place before the court nor was it subject to evidentiary constraints or cross-examination. The investigation was prejudicial as it was neither conducted at the scene of the fall nor under similar conditions. Most critically, it constituted the introduction of new evidence in the jury room. Were our system of justice to sanction such a practice, the testimony of experts and even a trial itself would be rendered hollow formalities. We therefore hold the trial court's permitting the ladder to be taken into the jury room to be an abuse of its discretion.

As we have not considered the affidavit of the jury's foreman, we do not reach the additional question concerning the use of that instrument.

Accordingly, the circuit court of Knox County is reversed and this cause remanded for a new trial.

Reversed and remanded.

BARRY and SCOTT, JJ., concur.