2020 IL App (1st) 190905-U

SIXTH DIVISION
September 30, 2020

No. 1-19-0905

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| MARYANNE TADROS, | ) | Appeal from the Circuit Court of |
| | ) | Cook County |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CHRISTINE MARTE as Special Representative | ) | No. 16 L 1191 |
| of J. Richard Hisaw, deceased, J. RICHARD | ) | |
| HISAW & ASSOCIATES, GARY A. NEWLAND, | ) | |
| WASLEED GHUNEIM, DRAKE SHUNNESON, | ) | |
| and NEWLAND & NEWLAND, LLP, | ) | |
| | ) | Honorable Daniel J. Lynch |
| Defendants-Appellees. | ) | Judge Presiding |

JUSTICE GRIFFIN delivered the judgment of the court.
Presiding Justice Mikva and Justice Harris concur in the judgment.

**ORDER**

¶ 1   *Held*: The trial court did not abuse its discretion in ruling upon the challenged evidentiary issues. Plaintiff is not entitled to a new trial.

¶ 2   This is a legal malpractice case in which a jury entered a judgment of no liability in favor of defendants. Plaintiff appeals, and argues that the trial court abused its discretion when it made

rulings as to whether certain evidence could be introduced at trial. Plaintiff contends that she is entitled to a new trial. Finding no abuse of discretion in the trial court's evidentiary rulings that would warrant a new trial, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4      Plaintiff Maryanne Tadros and her father George Tadros purchased a commercial property in Schaumburg, Illinois. George Tadros and his son, Mike Tadros, used the property to run Antenna Systems & Supplies, Inc., a company that manufactured antenna systems for military and other applications. Plaintiff agreed to help in the purchase of the property because she had good credit and she wanted to help her father.

¶ 5      To purchase the property, two loans were obtained that were secured by mortgages on the property. One loan was made by First American Bank and the other by the Small Business Administration. Under the terms of the First American Bank loan, a balloon payment was due approximately 10 years after the loan was made, requiring the borrower to pay the full outstanding balance which, in this case, was $137,547.45. When the loan matured and the outstanding balance was not timely repaid, the loan went into default. First American Bank filed two lawsuits: one to foreclose on the property, and one for a collection of monetary damages.

¶ 6      When plaintiff was sued by First American Bank, she contacted defendant J. Richard Hisaw, an attorney she knew from her chiropractic practice. Hisaw primarily practiced personal injury law, but he agreed to represent plaintiff in the foreclosure and collection cases brought against her. Plaintiff's father filed for bankruptcy, leaving her as the only solvent obligee on the loan obligations. At some point, plaintiff learned that First American Bank was seeking a deficiency judgment against her which included all the costs and attorney fees that First American Bank was incurring in its efforts to collect on the defaulted loan obligations. She

claims that Hisaw never informed her about such expenses. Plaintiff terminated Hisaw as her attorney.

¶ 7    Plaintiff retained the office of defendant Newland & Newland to represent her. The aim of Newland & Newland's representation was to try to help plaintiff avoid having a deficiency judgment entered against her. First American Bank filed a motion for summary judgment on the loan obligations. The trial court granted First American Bank's motion for summary judgment on the issue of liability, and it continued the case for a prove-up on the issue of damages.

¶ 8    On the day that First American Bank was set to prove up its damages, Newland & Newland filed a motion to withdraw as plaintiff's attorney. Newland & Newland did not appear at the prove-up hearing on plaintiff's behalf. A judgment was entered against plaintiff. Plaintiff eventually sold the property at issue. The proceeds of the sale satisfied the outstanding loan obligations, but plaintiff was required to pay approximately $210,000 out of pocket due to the accumulation of interest, taxes, and attorney fees.

¶ 9    Plaintiff submitted a complaint against Hisaw with the Attorney Registration and Disciplinary Commission. She also filed this legal malpractice case against Hisaw, Hisaw's firm, Newland & Newland, and the individual Newland attorneys that worked on her case. In this case, plaintiff alleges that Hisaw was negligent, primarily because he failed to advise her at the outset of his representation that she should immediately sell the property that was the subject of the case against her. Plaintiff contends that she could have avoided a personal deficiency judgment if she had been instructed to sell the subject property immediately and she could have likewise avoided paying collection costs. Plaintiff alleges that the Newland attorneys were negligent for failing to appear at the prove-up hearing and for failing to seek a lifting of her father's bankruptcy stay so that the property could have been sold at an earlier date. Plaintiff contends

3

that she could have avoided at least some of the attorney fees and costs that ultimately became part of the judgment against her if the Newland attorneys had taken the above-described actions.

¶ 10    Both Hisaw and the Newland defendants denied the claims of negligence. Defendant Hisaw died after giving a deposition in this case, but before the case went to trial. Plaintiff's father, George Tadros, also died after giving a deposition in the case but before trial. The parties agreed that both Hisaw and George Tadros's deposition testimony could be used in place of trial testimony.

¶ 11    Before trial, the parties moved the court to decide several evidentiary issues through motions *in limine*. Plaintiff sought to present the testimony of attorneys Michael Ek and Michael Newman. Plaintiff sought to introduce those attorneys' testimony about distinctions between residential foreclosures and commercial foreclosures because Hisaw testified at his deposition that he had handled some residential foreclosures in the past, but had never handled a commercial foreclosure case. In particular, plaintiff wanted to have those witnesses tell the jury that during and after the financial crisis in 2008, courts in Cook County stopped enforcing deficiency judgments in residential foreclosures. Plaintiff wanted the witnesses to inform the jury that the same was not the case with commercial foreclosures. Thus, it was plaintiff's position that because Hisaw had only handled residential foreclosures in the past, he did not know about deficiency judgments in the commercial foreclosure context. The trial court held that plaintiff could not admit the proffered testimony because Hisaw was not asked at his deposition whether he appreciated the difference between residential and commercial foreclosures. On appeal, plaintiff argues that the trial court abused its discretion when it decided that the subject testimony would not be admitted.

¶ 12    Plaintiff filed motions *in limine* in which she sought to bar defendants from introducing evidence about other disputes between plaintiff and her family. She also sought to bar the introduction of evidence regarding the litany of formal complaints she had filed against people in connection with the foreclosure other than defendants, arguing that such evidence would be meant to portray her as litigious, vindictive and "unhinged." The trial court ruled that evidence about some of the disputes that plaintiff had with her family would be allowed, while other evidence about familial disputes would not. The trial court ruled that evidence about some of the formal complaints that she made against non-defendants would be allowed, while other evidence about the formal complaints would not.

¶ 13    During trial, the trial court was tasked with deciding whether Mark Belongia, who was the attorney that represented First American Bank in the suit against plaintiff, could testify about the content of conversations that he had with Hisaw during the underlying case. Plaintiff objected to Belongia testifying about his conversations with Hisaw on hearsay grounds. The trial court overruled plaintiff's objection, and Belongia was allowed to testify about a conversation he had with Hisaw before Hisaw's death.

¶ 14    The trial court was also presented with a question of whether to allow plaintiff to question Belongia about an event that occurred during her deposition in the underlying case. The trial court ruled that plaintiff could not pursue the topic. Plaintiff contends that she should have been able to cross-examine Belongia about his actions at the deposition, because, on direct examination, Belongia testified about plaintiff's demeanor during that same deposition.

¶ 15    During trial, the jury heard from several witnesses. Plaintiff's brother, Michael Tadros, provided testimony that is pertinent to the appeal and relevant to plaintiff's challenge to the admission of evidence about her familial disputes. Michael Tadros testified that he and his father

offered to pay off the loans before First American filed suit if plaintiff would sign over her interest in the property to them. The offer was made to plaintiff by email. Michael Tadros testified that his sister refused their offers. Michael also testified that he and his father approached First American Bank directly and attempted to pay off the loan if the bank would remove plaintiff from the title. Michael testified that First American informed him that it did not have the power to remove plaintiff from the title. Michael testified that he and his father attempted to sell the property, so that they could move the business to another location and not be obliged to plaintiff, but that plaintiff would not sign the listing agreement to allow for a sale of the property. Michael Tadros also testified about several other disputes that he and his father had with plaintiff, including disputes over a vehicle and other pieces of real property.

¶ 16    The jury returned a judgment of no liability in favor of defendants. Plaintiff filed a posttrial motion in which she asserted the above-claimed errors and submitted that she was entitled to a new trial. The trial court denied plaintiff's posttrial motion. Plaintiff now appeals, arguing that the trial court abused its discretion in ruling upon the asserted evidentiary issues, and she urges us to reverse the trial court's rulings and remand the case for a new trial.

¶ 17                                    II. ANALYSIS

¶ 18    The issue in this appeal is whether the trial court abused its discretion when it ruled adversely to plaintiff on certain evidentiary issues before and during trial. Plaintiff argues that the trial court erred in making several evidentiary rulings and that both the individual and cumulative effect of those errors deprived her of a fair trial.

¶ 19    A trial court is entitled to considerable deference in ruling on evidentiary issues, including rulings on motions *in limine*. *Inman v. Howe Freightways, Inc.*, 2019 IL App (1st) 172459, ¶ 140. Evidentiary rulings are committed to the sound discretion of the trial court, and

such rulings will not be reversed absent an abuse of that discretion. *Cetera v. DiFilippo,* 404 Ill. App. 3d 20, 36-37 (2010). An abuse of discretion occurs only if no reasonable person would take the view adopted by the trial court. *Id.* at 37. "The threshold for finding an abuse of discretion is high." *In re Leona W.*, 228 Ill. 2d 439, 460 (2008). Plaintiff raises four claims of error, and we address them herein in the order she raises them in her appellate brief.

¶ 20    Plaintiff's first claim of error is the trial court abused its discretion when it barred the proffered expert testimony by witnesses who would have testified about the distinctions between residential and commercial foreclosure practice. Plaintiff sought to introduce this testimony to demonstrate that Hisaw did not appreciate the differences between residential and commercial foreclosures and that his failure to appreciate such differences led to him providing inadequate representation. The decision to admit or bar expert testimony is one that lies within the sound discretion of the trial court and, accordingly, we will uphold the trial court's ruling on whether to admit such testimony absent an abuse of that discretion. *Snelson v. Kamm,* 204 Ill. 2d 1, 24 (2003).

¶ 21    Plaintiff alleges that Hisaw advised her that her only risk of loss in the cases brought against her by First American Bank was that she would lose her ownership interest in the property. Plaintiff alleges that Hisaw never told her about the potential that she could be subject to a deficiency judgment, including for interest, taxes, and attorney fees, and that she only learned about the possibility of a personal judgment against her when she sat for her deposition in that case. Plaintiff's theory of malpractice against Hisaw is that Hisaw should have told her to sell the property at the outset of the litigation, but because Hisaw was mistaken about the risk of a deficiency judgment, he did not give her the proper advice.

¶ 22    In Hisaw's deposition, which the parties agreed to use as a substitute for his trial testimony, he testified that he indeed informed plaintiff on more than one occasion that expenses would continue to accrue so long as the litigation continued. Hisaw also testified that he provided precisely the advice that plaintiff alleges he was negligent for not providing—to sell the property as soon as possible. Plaintiff's counsel never questioned Hisaw about his knowledge or lack thereof regarding distinctions between commercial and residential foreclosures. Plaintiff certainly never asked Hisaw about whether he knew about the customs and practices specific to Cook County foreclosure courts.

¶ 23    During Hisaw's life, plaintiff's then-operative complaints never alleged that Hisaw was negligent on account of not knowing the differences between residential and commercial foreclosures. It was not until after Hisaw died that plaintiff amended her complaint and alleged that Hisaw was negligent because he had only handled residential foreclosures and not commercial foreclosures, and, therefore, did not understand the deficiency judgment practices in the commercial foreclosure context. Plaintiff knew while Hisaw was living that he had only handled residential foreclosures. Still, she did not amend her complaint to craft this theory of liability until more than a year after Hisaw was deposed, and until after his death.

¶ 24    The trial court did not abuse its discretion in prohibiting the expert testimony at issue. Plaintiff's theory of Hisaw's negligence was never that his lack of familiarity with commercial foreclosure deficiencies was the reason for plaintiff's loss. As such, plaintiff did not examine this issue when she deposed Hisaw. We cannot know whether Hisaw, in fact, lacked the knowledge that plaintiff insinuates he lacked because plaintiff never asked him. It is purely speculative on both sides. To allow plaintiff to inform the jury that Hisaw lacked knowledge of the distinction between the different classes of foreclosure would have been prejudicial and manifestly unfair.

The only support plaintiff points to in support of the theory that Hisaw was ignorant of the distinctions between residential and commercial foreclosures is her own allegation of such and her own speculation that Hisaw did not know the differences.

¶ 25    The alleged causal connection between plaintiff's injury and Hisaw's alleged lack of appreciation for the differences in the courts' approach to deficiency judgments in commercial and residential cases is based on pure speculation. A trial court has discretion to bar an expert's testimony when the expert's opinion on a causal link is "contingent, speculative, and/or merely possible." *Friedman v. Safe Security Services, Inc.*, 328 Ill. App. 3d 37, 44-45 (2002). "It is well established that 'expert opinions based upon * * * guess, speculation, or conjecture as to what * * * might have happened are inadmissible.'" *Solis v. BASF Corp.*, 2012 IL App (1st) 110875, ¶ 94 (quoting *Modelski v. Navistar International Transportation Corp.,* 302 Ill. App. 3d 879, 886 (1999). It was not an abuse of discretion for the trial court to bar testimony about a wholly speculative link between Hisaw's alleged lack of knowledge about commercial foreclosures and plaintiff's injury. See *id.* The trial court did not commit reversible error when it barred plaintiff from introducing expert testimony about the differences between residential and commercial foreclosures.

¶ 26    Plaintiff's second claim of error is that the trial court abused its discretion when it allowed Mark Belongia, First American Bank's attorney in the underlying case, to testify about conversations he had with Hisaw before Hisaw's death. Plaintiff argues that the content of the conversations between Belongia and Hisaw constitute self-serving hearsay that is forbidden by the Illinois Rules of Evidence (citing Ill. R. Evid. 801 (West 2018); Ill. R. Evid. 803(3) (West 2018)).

¶ 27     The conversations that plaintiff argues should have been excluded concern plaintiff's allegation that Hisaw never instructed plaintiff to sell the property in the early stages of the representation. On direct examination, Belongia testified, with the aid of email correspondence and billing statements, that Hisaw requested a payoff letter from the bank which tends to support Hisaw's deposition testimony that he took steps early in the litigation aimed at selling the property. Plaintiff objects to Belongia's testimony that, after Belongia recommended to Hisaw that plaintiff immediately sell the property, Hisaw agreed with Belongia and thought that selling the property was "a good idea." Plaintiff argues that the above testimony should have been excluded on hearsay grounds and that Belongia should not have been able to testify about what Hisaw told him.

¶ 28     In the trial court, defendants argued that the testimony was permissible as either a statement by a party opponent or that it was admissible to show Hisaw's state of mind. Plaintiff argues that the statement should not have been allowed as a statement by a party opponent because, even though Hisaw and Belongia were agents of party opponents in the underlying case, the court should not allow Hisaw's statements to be used in his own favor in this malpractice case against him. Plaintiff contends that the self-serving nature of the statements are the type that the rules against hearsay are designed to prevent. Plaintiff also argues that the statements lack any indicia of reliability to be admitted under the "state of mind" exception to the hearsay rule. Plaintiff points out that she reported Belongia to the ARDC and he admittedly disliked her, so his sudden memory of conversations with Hisaw were not credible and testimony about them should not have been permitted.

¶ 29     Illinois Rule of Evidence 801(d)(2) (West 2018) provides that a statement is not hearsay if it is "a statement by the party's agent or servant concerning a matter within the scope of the

agency or employment, made during the existence of the relationship." Here, the statement Belongia testified about was offered against plaintiff, was made by Hisaw, plaintiff's agent, at the time he was representing her, and it concerned the foreclosure proceedings for which Hisaw was retained. Plaintiff does not contest that the statement meets the specific requirements under the Illinois Rules of Evidence (See Ill. R. Evid. 801(d)(2) (West 2018)), but she instead argues that the spirit of the Rules prevents this type of self-serving testimony from being admitted and that the Rule "cannot be appled in this situation." Plaintiff maintains that it was fundamentally unfair to allow Hisaw's statements into evidence for his own benefit and to the detriment of her—the party he served in an agency relationship. We express no opinion about the admissibility of the testimony under Rule 801 and we turn to the parties' arguments regarding hearsay exceptions.

¶ 30    Defendants contend that Belongia's testimony about the statement Hisaw made is admissible because it showed Hisaw's state of mind at the time of the communication. Statements that indicate a declarant's state of mind are admissible as hearsay exceptions when the declarant is unavailable to testify and there is reasonable probability that the proffered statement is truthful; the declarant's state of mind must also be relevant to a material issue in the case. *Gunn v. Sobucki*, 352 Ill. App. 3d 785, 789 (2004). Under the state-of-mind exception to the hearsay rule, a hearsay statement may be admissible if it expresses the declarant's intentions, plans, or motivations at the time of the utterance. *People v. Munoz*, 398 Ill. App. 3d 455, 479 (2010).

¶ 31    The statement at issue in this case, that Hisaw requested a payoff letter from Belongia and thought the idea of selling the property was a good one, reflect the deceased Hisaw's state of mind at the time of the conversation. In addition, there is evidence from which it is reasonable to

conclude that the statement is truthful. As detailed in Belongia's testimony, irrefutable email records demonstrate that Belongia sent the payoff letter to Hisaw, "as requested" by Hisaw. The statement is also supported by contemporaneously prepared billing records. There is no evidentiary issue regarding Belongia's testimony that he and Hisaw had discussions regarding the payoff letter. Likewise, plaintiff did not, and still does not, argue that the payoff letter itself or the emails concerning it are inadmissible. Then, the only potentially objectionable testimony is Belongia's statement that Hisaw told him that selling the property was "a good idea." But that testimony relates solely to Hisaw's state of mind after hearing Belongia's suggestion that the property be sold. Thus, the testimony was admissible as an exception to the rule against hearsay.

¶ 32      Plaintiff also argues that Belongia's testimony about his conversations with Hisaw led to a "trial by ambush" because defendants must have been aware that Belongia would testify that he and Hisaw discussed a sale of the property, despite Belongia testifying at his deposition that he could not remember any such conversations. Plaintiff contends that the Illinois Supreme Court Rules governing discovery forbid the admission of the statements Hisaw made to Belongia because defendants did not disclose evidence of Belongia's conversations with Hisaw prior to trial (citing Ill. S. Ct. R. 213(f)(1) (West 2018)). Plaintiff did not raise this objection at trial or in her posttrial motion, and it is forfeited. *Doe v. Hastert*, 2019 IL App (2d) 180250, ¶ 38.

¶ 33      Moreover, plaintiff was able to cross-examine Belongia about all of the matters she now raises in regard to his testimony. She was free to try to demonstrate that Belongia was conveniently inventing testimony for trial, as she now suggests. She was free to try to demonstrate that Belongia was lying about his conversations with Hisaw, as she now suggests. Those were matters for the jury to assess when they decided whether to credit Belongia's testimony. In light of plaintiff's opportunity for cross-examination and the totality of the other

circumstances at play, we do not view the admission of Belongia's testimony about his conversations with Hisaw, that is supported by other admissible evidence, to constitute an abuse of discretion.

¶ 34    Plaintiff's third claim of error is that the trial court abused its discretion when it allowed defendants' counsel to question Belongia about plaintiff's demeanor during her deposition in the underlying case, but did not allow plaintiff to cross-examine Belongia about his own conduct in that same deposition. Plaintiff concedes that she did not object at trial to Belongia's testimony about her demeanor, but she claims that her failure to object was strategic because she believed that the trial court would give her the opportunity to address Belongia's own demeanor at the deposition.

¶ 35    The specific deposition testimony plaintiff references in support of her argument concerns Belongia asking plaintiff to verify that she signed a particular pleading. Plaintiff alleges that, at the deposition, Belongia actually failed to show her the document she was being asked to verify. She claims that Belongia's testimony portrayed her negatively, when it was really his own conduct that caused her negative reaction which was then used against her. Plaintiff contends that the rule of completeness entitled her to address this issue before the jury.

¶ 36    Plaintiff's characterization of this issue as significant and causing "dramatic harm" to her is misplaced. The issue was trivial in terms of the entire trial. At her deposition in the underlying case, plaintiff refused to admit that she executed the note evidencing the loan. She then refused to admit that she signed the mortgage. However, before the deposition, she had admitted in her verified answer to the complaint that she had, in fact, executed those documents. Although Belongia apparently did not show plaintiff her signature verifying the pleading when he asked

her if she had executed that verified pleading, Belongia never testified about the pleading-verification issue at trial.

¶ 37    Instead, at trial, Belongia was only asked on direct examination whether plaintiff refused to admit that she signed the note and the mortgage during her deposition in the underlying case. He did not testify that she refused to admit the accuracy of the verification of the answer. The jury had no knowledge of plaintiff's refusal to admit the authenticity of her verified answer, so the circumstances surrounding that part of the deposition are irrelevant. When the dispute regarding her answer came up at the deposition, plaintiff had already refused to admit the authenticity of her signatures on the note and the mortgage. Belongia's apparent mistake of not showing her the signature page to her answer had no bearing on her being intentionally difficult with regard to questions about her execution of the relevant loan documents. It is undisputed that plaintiff had, in fact, verified the pleading, and no false light was cast upon her at trial about the verification of the answer. The trial court did not err by refusing to let plaintiff explore a matter that was beyond the scope of the direct examination where the jury was not in any way misled or given a false sense of what occurred at the deposition.

¶ 38    Insofar as this argument concerns plaintiff's negligence claim against the Newland defendants, the result is the same. Plaintiff argues that the jury must have concluded that she was so unsympathetic that it ignored the evidence about the Newland defendants' negligence and returned a verdict in their favor in spite of the evidence. Plaintiff contends that the Newland defendants' negligence was obvious and that she was entitled to a directed verdict against them. In the very next sentence, however, plaintiff concedes that she did not move for a directed verdict against the Newland defendants, but suggests that "she certainly would have been entitled to one had she done so." We, of course, do not engage in the analysis of hypothetical challenges.

14

We similarly cannot know the jury's motivation for returning a verdict of no liability in favor of the Newland defendants. Plaintiff does not seek to have the jury verdict set aside on the basis that it was against the manifest weight of the evidence, she solely argues that she is entitled to relief on appeal based on the trial court's evidentiary rulings. As stated previously, we find no abuse of discretion in the trial court's ruling with regard to Belongia's testimony about plaintiff's refusal to admit that she executed the loan documents at her deposition.

¶ 39     Plaintiff's fourth claim of error is that the trial court abused its discretion by allowing defendants to introduce evidence about plaintiff's myriad disputes with her family and the variety of formal complaints she filed against people involved with this case and the underlying case. Plaintiff argues that the other disputes she had with her family were irrelevant, and she argues that the evidence regarding the complaints she filed against the people connected to the foreclosure was inflammatory and meant to portray her as "litigious, vindictive, and unhinged." Plaintiff contends that any probative value of the evidence on these issues was outweighed by its prejudice.

¶ 40     It is within the discretion of the trial court to balance the probative value of the evidence against its prejudicial effect or tendency to create confusion, and to decide whether the evidence should be admitted. *Greco v. Orthopedic & Sports Medicine Clinic, P.C.*, 2015 IL App (5th) 130370, ¶ 21. Even if an abuse of discretion has occurred, it will not warrant a reversal unless the record indicates the existence of substantial prejudice affecting the outcome of the trial. *Id*.

¶ 41     Plaintiff concedes that she did not object to the admission of the evidence at issue because "the defendants had a right to present relevant argument that acrimony between family members relating to the [subject] Property caused [plaintiff's] damages." Plaintiff contends, however, that evidence about other disputes like the truck she purchased for her father and then

repossessed, or the eviction letter she sent to her parents about evicting them from their home, or the complaints she filed with the ARDC against Belongia and the Human Rights Commission against the bank, only served to show her bad character. Plaintiff specifically points to the statement defense counsel made in his closing argument in which he urged the jury to find against plaintiff because she would file complaints against anyone and say or do anything to get her way.

¶ 42    Both Hisaw and the Newland defendants employed the defense that plaintiff caused her own damages by refusing the requests of her father and brother to take title to the property and relieve her of her obligations. The disputes between plaintiff and her family members, other than the dispute that was the subject of the underlying case, were relevant to show plaintiff's motivation in the underlying case. The evidence of the numerous and significant disputes between the family members was directly relevant to defendants' defense that plaintiff caused her own damages because she refused to work with her family to avoid the outcome that eventually came about in the foreclosure case. The evidence spoke directly to the issue of causation and whether it was Hisaw's advice, or plaintiff's own actions, that cause the damages. The evidence tended to disprove plaintiff's allegation that Hisaw's advice proximately caused her to incur all the costs and fees associated with the foreclosure. Instead, it showed that plaintiff refused to accept the offers of her brother and father that could have ameliorated the damages she eventually faced. The evidence about the many family disputes was crucial to the narrative of plaintiff's possible motivation.

¶ 43    Moreover, the trial court considered the evidence about the family turmoil on an issue-by-issue basis and determined that some of the evidence should be allowed and some should not. The trial court, for example, did not allowed testimony from plaintiff's brother that plaintiff tried

16

to have his children taken away from him by child services. The trial court similarly did not allow plaintiff's brother to testify about his claim that plaintiff tried to steal his identity. The trial court employed its discretion and allowed evidence that reasonably tended to be helpful to the jury in resolving the claims at issue in this case.

¶ 44     As to the issue of the complaints that plaintiff filed, the evidence shows that she filed at least 10 formal complaints concerning the underlying foreclosure case. Again, the trial court allowed evidence of some of the complaints into the trial and disallowed evidence of others. The trial court allowed evidence about the human rights complaint plaintiff filed against the bank, the lawsuit she filed against the bank, the FDIC complaint she filed against the bank, the ARDC complaint she filed against Hisaw, and the ARDC complaint she filed against Belongia. All of those complaints had bearing on the credibility of plaintiff and they served to rebut claims she made about the motivations for her actions that led to the exacerbation of the damages in the underlying case. The party on the other end of those complaints was either a party in this case or the underlying case or a witness. The trial court did not abuse its discretion in allowing the selection of formal complaints into evidence that had a direct bearing on matters at issue in this case.

¶ 45     Insofar as this argument concerns plaintiff's claims against the Newland defendants, the result is the same. Plaintiff argues that the Newland defendants capitalized on the trial court's supposed evidentiary errors by referring to that evidence in their closing argument. However, as we have explained, the trial court did not abuse its discretion when it allowed evidence of the myriad complaints that plaintiff filed in connection with the underlying case into evidence. As such, the Newland defendants were free to refer to that evidence in their closing argument.

¶ 46     After a review of the claimed evidentiary errors individually and cumulatively, we conclude that plaintiff was not deprived of a fair trial. The trial court did not abuse its discretion in ruling upon any of the challenged evidentiary matters that are the subject of this appeal. We see no reason to disturb the jury's verdict and find no error entitling plaintiff to relief on appeal.

¶ 47                                III. CONCLUSION

¶ 48     For the foregoing reasons, we affirm.

¶ 49     Affirmed.